[No. 877.   Decided July 27, 1893.]

EMA G. GIRAULT, *Respondent*, v. THE A. P. HOTALING COMPANY (OF PUGET SOUND) *et al.*, *Appellants*.

ADVANCEMENT — FRAUDULENT CONVEYANCE — ESTOPPEL.

The fact that a woman furnished her son-in-law with money with which to buy a lot and construct a building in a town to which the family comptemplated removing, and that the son-in-law took the title to the land in his own name, does not constitute an advancement, when none of the parties to the transaction ever claimed or treated it as one.

Where money has been furnished by a woman to her son-in-law for the purchase of land, the title to which he takes in his own name, and then afterwards conveys to her husband, the fact that the husband and son-in-law, while holding the title to the land, are engaged in a co-partnership business in which they become indebted to others, will not render a conveyance of such land by the husband to the wife fraudulent as to creditors, especially when enough other assets remain to pay the indebtedness of the firm.

In such a case, where it is not shown the creditors of the husband and son-in-law had any knowledge that the title to said property was in them at the time the indebtedness was contracted, nor that any of the family had ever represented that the members of the co-partnership had any interest therein, the fact that title was allowed to remain in them does not constitute an estoppel.

*Appeal from Superior Court, Skagit County.*

*Million & Houser*, for appellants.

*Fishback, Elder & Hardin*, for respondent.

The opinion of the court was delivered by

SCOTT, J.—The respondent brought an action against the appellants to enjoin them from selling the north half of the north half of lots 1 and 2, in block 34, in the city of Anacortes, and a decree was rendered in her favor.  The respondent was formerly Mrs. Le Boucher, and resided at Walla Walla, in this state, where her former husband had been engaged in the saloon and liquor business.   After Mr. Le Boucher's

death, the respondent's son-in-law, O. T. Frechette, ran the business a while for her. In September, 1890, he concluded to go to Anacortes and locate there, but had no money. Respondent wished to be near her daughter, who was an only child, and expressed her willingness to buy a lot and erect a building thereon at Anacortes, the upper part of which should be occupied by respondent with her haughter and son-in-law as their home, and the lower part of which might be used by the son-in-law for a business house, if he so desired, respondent intending to start him in some suitable business. She°accordingly gave Frechette $300 with which to go to Anacortes, so that he might have money enough for his expenses, and might have at least the sum of $200 to pay as a deposit on the purchase of a lot, if he found one that suited him. Frechette went to Anacortes, and bought the north half of said lots one and two, and paid thereon $200, and respondent sent him $1,300 more with which to complete the purchase. He took the deed therefor in his own name. Subsequently the respondent furnished Frechette with money with which he built two business houses on the last described tract. The respondent moved to Anacortes, and took possession of one of said buildings, which was situated on the north half of the tract last described, the sale of which she sought to enjoin in said action, and she has ever since occupied this building as a home, and was in actual possession thereof at the time of trial, her son-in-law and daughter having removed therefrom. This is the building first constructed; the other building was erected on the south half of the tract purchased. It does not appear that Frechette had any authority from the respondent to take the deed to said land in his own name, or that she knew he had done so until some time thereafter. After moving to Anacortes the respondent married a Mr. Girault, and Frechette and Girault entered into a copartnership in the grocery and liquor

business, carrying on the grocery business in the store room on the premises in controversy, and carrying on a wholesale liquor business, with a saloon attached, in the other building on the south half of the tract purchased. After the marriage of the respondent with Girault, Frechette and wife voluntarily conveyed the north half of the tract purchased to Mr. Girault. The copartnership between Girault and Frechette continued from the latter part of January, until the 15th day of July, 1891, on which last named date Girault withdrew from the firm and turned over all of his interest therein to Frechette, who agreed to pay all the indebtedness of the firm, and gave Girault a mortgage on the stock of goods and property of the firm, and upon the south half of the tract of land purchased as aforesaid, to secure the performance of such agreement. At the time of the dissolution of said firm it appears from the testimony that the firm was indebted in the sum of $4,000, and that the stock of goods on hand was worth $4,000, and that there were other firm assets consisting of accounts due the firm, amounting to $1,500, and bills receivable for $1,100, and the business house and lot whereon the business was conducted, being the south half of the tract purchased as aforesaid, which, there was some testimony to show, was worth the sum of $2,500. In the month of August following the dissolution of the copartnership, Girault conveyed the property in controversy, the north half of the tract purchased, to respondent. Soon thereafter appellant Hotaling & Co. commenced suit and obtained judgment against Frechette and Girault for liquors furnished them while they were in partnership in the saloon business, and caused an execution to issue and to be levied upon the whole of the tract of land purchased, and were proceeding to sell the same under said execution until restrained from selling the north half of said tract, which had been conveyed to the respondent as aforesaid. The fact that re-

spondent had furnished the money for the purchase of the whole of said tract of land, and for the erection of both buildings is not controverted, but appellants contend that the circumstances under which the money was paid make it, in effect, an advancement to the son-in-law; and furthermore, that as the legal title to the property was allowed to remain in Girault, the respondent's husband, during the existence of the partnership, that the respondent is estopped from setting up her ownership as against the record title as it existed during the period in which the goods were sold by appellant to the firm.

As to the first proposition, there is nothing in the record to show that the respondent intended said money as an advancement to her son-in-law, or that she intended he should deal with it in any other way than as her money, and there is nothing to show that either Frechette or his wife at any time ever claimed that it was an advancement, or that they ever claimed any interest in the property in controversy. There is no foundation in the testimony to charge the respondent with any bad faith in the premises. It was not shown that she had any knowledge that either Frechette or the firm were indebted at the time the legal title to the tract in question was conveyed to her by Girault; and it further appears that at the time the partnership was dissolved Frechette had assets enough in his hands to more than pay the indebtedness of the firm.

As to the second proposition, there is nothing upon which an estoppel can be founded, for it does not appear that either Frechette, Girault or the respondent ever represented that the firm, or either member of the firm, owned the tract of land in question or had any interest therein. Appellants' contention is founded upon the bare fact that the legal title to this property was in Frechette and Girault subsequently, as aforesaid, and was of record, but it is not shown, nor was there any attempt to show, that

appellants had any knowledge that either Girault or Fre-
chette held, or had ever held, the title to said property at
the time the indebtedness was contracted. or subsequently
prior to the issue of the execution aforesaid.

Upon this state of facts it seems to us that the judgment
of the superior court was unquestionably right, and it is
affirmed.

DUNBAR, C. J., and ANDERS, STILES and HOYT, JJ.,
concur.